

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2004 DEC 10  PM 4: 02

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JOEL ELLIS HUTCHISON

VERSUS

DONALD ZANOTELLI ET AL.

CIVIL ACTION

NO. 04-2035

SECTION "N" (2)

## REPORT AND RECOMMENDATION

Plaintiff, Joel Ellis Hutchison, is a convicted prisoner currently incarcerated in the Bossier Parish Correctional Facility ("Bossier") in Plain Dealing, Louisiana. He filed this complaint pro se and in forma pauperis pursuant to 42 U.S.C. § 1983 against Jefferson Parish Sheriff's Deputy Donald Zanotelli and the Jefferson Parish Sheriff's Office (Sheriff Harry Lee). Hutchison alleges various violations of his constitutional rights, including that he was beaten on two occasions by Jefferson Parish sheriff's deputies, once on December 21, 2002 by Zanotelli and again on June 13, 2003, by other deputies but at Zanotelli's instigation. He seeks $1 million in damages and a criminal investigation of defendant Zanotelli. Record Doc. No. 1 (Complaint at ¶ V).

DATE OF MAILING _____
DEC 1 3 2004

DATE OF ENTRY
DEC 1 3 2004

Fee_____
Process_____
X Dkt _____
CIRmDep_____
Doc. No._____

On October 19, 2004, I conducted a telephone conference in this matter. Participating were plaintiff pro se (via telephone) and Franz Zibilich, counsel for defendants (in person). Plaintiff was sworn and testified for all purposes permitted by Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985), and its progeny.

## THE RECORD

Plaintiff testified that he is currently incarcerated in Bossier based on his plea of guilty on April 19, 2004, in state court in Jefferson Parish to charges of possession with intent to distribute Valium, ecstasy and steroids and theft over $500, which he described as a computer fraud charge. He stated that he is serving a sentence of seven (7) years in prison.

Hutchison testified that he has been incarcerated in Bossier for about three months. He stated that before his transfer to Bossier, he had been housed in the Elayn Hunt Correctional Center ("Hunt") for about three weeks, from July 6 to the end of July 2004. He testified that before his transfer to Hunt, he had been incarcerated in the South Louisiana Correctional Center ("Basile") in Basile, Louisiana, from the first week of May 2004 to July 6, 2004. Hutchison stated that before his transfer to Basile he was housed in the Jefferson Parish Correctional Center from June 13, 2003 through the last day of April 2004.

2

Plaintiff confirmed the allegations in his written submissions that his complaint essentially asserts two claims of the use of unconstitutionally excessive force against him by Jefferson Parish sheriff's deputies, the first having occurred on December 21, 2002, and the second having occurred on June 12 or 13, 2003. He alleged that defendant Zanotelli was involved in both, the first time as the person who administered the beating and the second time as instigator.

The record of this court reflects that plaintiff's complaint in this case was received by the clerk of this court on June 23, 2004 in an envelope postmarked in Basile on June 21, 2004. Hutchison confirmed in his testimony that he mailed his complaint to this court from Basile. Asked when he had put his complaint in the mail, Hutchison testified: "I believe I had put it in around the 18th or 19th" of June 2004. He described the physical procedure for placing materials in the mail at the Basile prison facility as follows: "First, it's inspected by one of the guards there before it's sealed, then I seal it, then there's a wooden mailbox in the cafeteria, and I place it in the mailbox." He said he did that on June 18 or 19, 2004, and that sometimes it takes some time for the mail actually to be sent.

Hutchison again confirmed the allegations in his written submissions that the first beating about which he complains in this case occurred on December 21, 2002, and the second occurred on June 13, 2003, and that some incidents of abuse occurred thereafter,

3

through June 20, 2003.  Asked to describe these later events that occurred after the second beating, Hutchison testified that "in court . . . on June 20, 2003, in Division "M" – Judge Sullivan's courtroom.  The judge had ordered that Detective Zanotelli stay away from me, granted a stay-away order.  Detective Zanotelli had mouthed the words, 'I'm gonna get you, mother f—," in front of some witnesses who were with me, and my attorney got a stay away order granted."  Plaintiff stated that these things happened in court on June 20th.  He also complained that on the same day, Zanotelli had his sister removed from the courtroom and told his sister "she was next" and "ran her ID, her driver's license, for warrants."  He said that on the same day Zanotelli was also ordered to stay away from plaintiff's girlfriend, Samantha Boleware.  Asked to focus on things that had happened to him – since he is the only plaintiff in this lawsuit – Hutchison testified that nothing other than the June 20th courtroom incident occurred after the alleged second beating on June 13, 2003.

Hutchison testified that the reason "I waited so long to file a lawsuit [was] because I had feared retaliation from Detective Zanotelli while I was still in the Jefferson Parish Correctional Center."  He confirmed, however, that he had been transferred to Hunt on July 6, 2004, and that earlier he had been transferred from Jefferson Parish to Basile in the first week of May 2004.

4

On cross-examination, Hutchison testified that on June 13, 2003, he and his girlfriend had appeared in court together, where she testified for him concerning some domestic charges, which were "thrown out." Plaintiff stated that Detective Zanotelli telephoned his girlfriend's house less than an hour after she returned home, asking for plaintiff's address and telling her that he was going "to get me once and for all that night." He stated that at 5 or 6 p.m. that evening, Zanotelli and several other officers came to her house, got his address from her parents, expressed anger that plaintiff had filed an internal affairs complaint against him and told them they were going to arrest him for violating a protective order. He stated that Zanotelli called him and told him he was coming to get him that night. Plaintiff stated that later that night there was a banging on the door, and it was Zanotelli and other police officers. He said that the officers had no search warrant, but Zanotelli contacted the apartment manager, got a key and came into plaintiff's apartment. Plaintiff said he was scared of Zanotelli because of the December 2002 incident, so he went upstairs to a window and lowered himself out the window and onto a ledge, jumped onto the roof of his van, then down to the ground, where he "fled on foot."

Hutchison testified that Zanotelli called for a canine unit and other officers, who located plaintiff hiding behind a shed about an hour later. Plaintiff stated that he was "brutally beaten. They unleashed a canine on me. I had received numerous kicks to my

5

face, I had my nose broken in four places. My face was stitched up. This was basically correlated (sic) by Detective Zanotelli. He told them I was armed and dangerous. This all stems from misdemeanor violation of a protective order."

Asked who beat him on June 13, 2004, plaintiff stated that it was Deputy Lance Williams and Canine Officer Malcolm Faber, Jr., not Zanotelli. He said that Zanotelli was on the scene and after the beating walked up to him and "spit in my face." He said the beating occurred "in the early morning hours of the 13th or really, really late on the 12th."

Hutchison confirmed that he has sued Faber in another section of this court in a separate lawsuit concerning the same incident. He stated that "what I believe is that Detective Zanotelli told these officers a lie that I was a child molester."

Plaintiff confirmed that he had received a copy of the medical records that I previously ordered produced, Record Doc. Nos. 4 and 16, that he had reviewed them and that the records are "fairly accurate."

Hutchison further testified that the basis for his complaint against Sheriff Lee is that Zanotelli has a record of improper behavior, about which the Sheriff must have known, and that a pattern of abuse by Zanotelli and others in the street crimes unit, permitted by Sheriff Lee's lack of supervision and failure to provide proper training, should result in liability for the sheriff.

# ANALYSIS

## I.    STANDARDS OF REVIEW

"A federal court may dismiss a claim in forma pauperis 'if satisfied that the action is frivolous or malicious.'" Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994) (quoting former 28 U.S.C. § 1915(d), now incorporated in 28 U.S.C. § 1915(e), as amended). A complaint is frivolous "if it lacks an arguable basis in law or fact." Davis v. Scott, 157 F.3d 1003, 1005 (5th Cir. 1998); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). The law "'accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.'" Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994) (quoting Neitzke v. Williams, 490 U.S. 319, 327 (1989)).

The purpose of a Spears hearing is to dig beneath the conclusional allegations of a pro se complaint, to ascertain exactly what the prisoner alleges occurred and the legal basis of the claims. Spears, 766 F.2d at 180. "[T]he Spears procedure affords the plaintiff an opportunity to verbalize his complaints, in a manner of communication more comfortable to many prisoners." Davis, 157 F.3d at 1005. The information elicited at such an evidentiary hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). Wilson v. Barrientos, 926 F.2d 480, 481 (5th Cir.

7

1991); <u>Adams v. Hansen</u>, 906 F.2d 192, 194 (5th Cir. 1990). "Upon development of the actual nature of the complaint, it may also appear that no justiciable basis for a federal claim exists." <u>Spears</u>, 766 F.2d at 182.

The court may make only limited credibility determinations in a <u>Spears</u> hearing, <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997) (citing <u>Cay v. Estelle</u>, 789 F.2d 318, 326-27 (5th Cir. 1986), <u>overruled on other grounds by Denton v. Hernandez</u>, 504 U.S. 25, 112 S.Ct. 1728 (1992)), and may consider and rely upon documents as additional evidence, as long as they are properly identified, authentic and reliable. "The court should allow proper cross-examination and should require that the parties properly identify and authenticate documents. A defendant may not use medical records to refute a plaintiff's testimony at a <u>Spears</u> hearing." <u>Id.</u> (citing <u>Wilson</u>, 926 F.2d at 482-83; <u>Williams v. Luna</u>, 909 F.2d 121, 124 (5th Cir. 1990)).

After a <u>Spears</u> hearing, the complaint may be dismissed as legally frivolous if it lacks an arguable basis in law, <u>Jackson v. Vannoy</u>, 49 F.3d 175, 176-77 (5th Cir. 1995); <u>Moore v. Mabus</u>, 976 F.2d 268, 269 (5th Cir. 1992), or "as factually frivolous only if the facts alleged are 'clearly baseless,' . . . [or] when the facts alleged rise to the level of the irrational or wholly incredible." <u>Id.</u> at 270.

"'A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest

8

which clearly does not exist.'" <u>Davis</u>, 157 F.3d at 1005 (quoting <u>McCormick v. Stalder</u>, 105 F.3d 1059, 1061 (5th Cir. 1997)). "When a complaint raises an arguable question of law which the district court ultimately finds is correctly resolved against the plaintiff, dismissal under Rule 12(b)(6) is appropriate; however, dismissal under the section 1915(d) standard is not." <u>Moore</u>, 976 F.2d at 269. A prisoner's in forma pauperis complaint which fails to state a claim may be dismissed sua sponte at any time under 28 U.S.C. § 1915(e)(2) and 42 U.S.C. § 1997e(c)(1).

In this case, plaintiff's complaint may be dismissed under 28 U.S.C. §§ 1915(e) and 1915A(b)(1), either as frivolous because it lacks an arguable basis in law or under Rule 12(b)(6) in light of his testimony explaining the factual basis of his claims. Plaintiff's complaint, as amended by his testimony at the <u>Spears</u> hearing, fails to state a claim upon which relief can be granted under the broadest reading[1] because it is barred by the applicable statute of limitations.

II.    PRESCRIPTION

Hutchison's Section 1983 claims concerning alleged beatings on December 21, 2002 and June 13, 2003, must be dismissed because they are barred by the applicable statute of limitations. Although Section 1983 contains no express statute of limitations,

---

[1] Pro se civil rights complaints must be broadly construed, <u>Moore</u>, 30 F.3d at 620, and I have broadly construed the complaint in this case.

the one-year Louisiana prescriptive period is applicable to suits in this federal court under Section 1983. Jacobsen v. Osborne, 133 F.3d 315, 319 (5th Cir. 1998); Washington v. Breaux, 782 F.2d 553, 554 n.1 (5th Cir. 1986); Jones v. Orleans Parish Sch. Bd., 688 F.2d 342 (5th Cir. 1982). Louisiana law provides for a one-year prescriptive period from the date of injury or damage. La. Civ. Code art. 3492; Freeze v. Griffith, 849 F.2d 172, 175 (5th Cir. 1988).

The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of filing in forma pauperis complaints. Martin v. Demma, 831 F.2d 69, 71 (5th Cir. 1987). However, in the pro se prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the complaint from the plaintiff for delivery to the court is considered the time of filing for limitations purposes. Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995); Thompson v. Raspberry, 993 F.2d 513, 515 (5th Cir. 1993) (pro se prisoner's objection to magistrate's report and recommendation deemed filed when forwarded to prison officials for delivery to court).

In this case, Hutchison testified that he personally placed the envelope containing his lawsuit in the mailbox at Basile on June 18 or 19, 2004. This testimony by plaintiff is consistent with the physical evidence in this case. The envelope received by the clerk of this court containing plaintiff's lawsuit was postmarked in Basile, Louisiana, on June

10

21, 2004. In addition, plaintiff's complaint was tendered for filing to the Clerk on June 23, 2004, and it was actually filed on July 23, 2004. Record Doc. No. 1. Thus, under the "mailbox rule," Hutchison's complaint is considered to have been filed and this action commenced at the earliest on June 18, 2004, for limitations purposes.

The Fifth Circuit has held that the Section 1983 prescriptive period commences when the aggrieved party either knows of the violation or has notice of facts which, in the exercise of due diligence, would have led to actual knowledge. Brown v. Nationsbank Corp., No. 97-41214, 1999 WL 694692, at *8 (5th Cir. Sept. 8, 1999); Piotrowski v. City of Houston, 51 F.3d 512, 516 (5th Cir. 1995) (citing Vigman v. Community Nat'l Bank & Trust Co., 635 F.2d 455, 459 (5th Cir. 1981)). In this case, the beatings occurred on December 21, 2002 and June 13, 2003, both more than one year before the "mailbox rule" filing date of June 18, 2004. Thus, Hutchison's Section 1983 complaint is barred by the applicable statute of limitations, unless the running of the prescriptive period was interrupted, tolled or otherwise extended under the applicable law.

In addition to applying the forum state's statute of limitations, federal courts must also give effect to any applicable tolling provisions provided by state law. Parks v. City of Slidell, No. 97-1993, 1998 WL 158952, at *4 (E.D. La. Apr. 1, 1998) (Clement, J.) (citing Gartrell v. Gaylor, 981 F.2d 254, 257 (5th Cir. 1993)).

11

The running of prescription under Louisiana law may be suspended or tolled for equitable reasons, which have been expressed in the civilian legal principle of contra non valentem. Under this theory, there are four situations in which the one-year prescriptive period for delictual actions will not run: (1) if there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiff's action, (2) if there was some condition coupled with the contract or connected proceeding which prevented the creditor from suing or acting, (3) if the debtor himself has done some act effectually to prevent the creditor from availing himself of his cause of action and (4) if the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant. Id. (citing Corsey v. Department of Corrections, 375 So. 2d 1319, 1321-22 (La. 1979)).

Thus, the "doctrine of contra non valentem recognizes that in limited circumstances prescription should not run if good cause exists as to why plaintiff would have been unable to exercise or was lulled into not exercising a cause of action when it first became exigible." Pracht v. City of Shreveport, 830 So.2d 546, 551 (La. App. 2d Cir. 2002).

In addition, the continuing tort doctrine may act to extend the prescriptive period, but only if the events giving rise to the claim are truly continuing in nature. Thus, "'when the cause of the injury is a continuous one giving rise to successive damages,'

12

prescription does not begin until the conduct causing the damage is abated." <u>Id.</u> at 550 (quoting <u>South Central Bell Telephone Co. v. Texaco, Inc.</u>, 418 So.2d 531 (La. 1982)) (emphasis added). "A continuing tort exists <u>where a defendant's damaging conduct is a continuing act</u> and gives rise to successive damages from day to day." <u>Coulon v. Witco Corp.</u>, 848 So.2d 135, 137 (La. App. 5th Cir. 2003) (emphasis added). Only "continuing and repeated wrongful acts are to be regarded as a single wrong" giving rise to application of the continuing tort doctrine. <u>Wilson v. Hartzman</u>, 373 So.2d 204, 207 (La. App. 4th Cir. 1979).

For the following reasons, neither the doctrine of contra non valentem nor the continuing tort doctrine apply, and Hutchison's claims are prescribed.

Plaintiff testified that two other incidents of abuse by Zanotelli toward him occurred after the alleged June 13, 2003 beating. However, plaintiff's testimony established that the first incident involved plaintiff's girlfriend and sister, who are not plaintiffs to this suit. Plaintiff testified that the last incident occurred on June 20, 2003 in the Jefferson Parish Court when Zanotelli allegedly used vulgar and threatening language toward him. Although the last incident occurred during the prescriptive period, for the reasons discussed below, these allegations do not constitute a violation of plaintiff's constitutional rights "giving rise to successive damages."

13

In these circumstances, plaintiff's claims alleging that he was beaten are based exclusively upon particular incidents occurring on December 21, 2002 and June 13, 2003, more than one year prior to June 18 or 19, 2004, the date on which his complaint is deemed filed under the mailbox rule. Therefore, the cause of his alleged injuries was two beatings, not a continuing series of wrongful acts. Although plaintiff alleges that his damages are continuing, it is only the continuing nature of the wrongful conduct causing it that triggers the continuing tort doctrine.

Hutchison's testimony establishes that nothing other than the June 20th courtroom incident occurred after the alleged second beating on June 13, 2003. As mentioned above and addressed below, this claim, although not prescribed, does not constitute a violation of plaintiff's constitutional rights. Thus, the continuing tort doctrine does not apply to Hutchison's claims concerning the alleged beatings on December 21, 2002 and June 13, 2003, which must be dismissed due to expiration of the one-year statute of limitations.

In addition, plaintiff has not asserted any cause or condition which require application of the doctrine of contra non valentem. There is nothing that might have prevented him from filing his complaint within the applicable one-year prescriptive period. Hutchison's complaint and testimony establish that, before one year prior to his filing of the instant action, he clearly knew of defendants' allegedly unconstitutional

14

actions, the beatings.  Although Hutchison testified that the reason he waited so long to file his lawsuit was because he feared retaliation from Zanotelli while he was still incarcerated in the Jefferson Parish Correctional Center, he confirmed that he had been transferred from Jefferson Parish to Basile in the first week of May 1, 2004.  Thus, for the six weeks remaining in the applicable statute of limitations period, Hutchison was not in custody in Jefferson Parish when he could have mailed his lawsuit and did not.  Nothing prevented Hutchison from filing this lawsuit in a timely fashion.  His testimony establishes that he was not incapable of taking action on his own behalf.  The record establishes no condition that might have tolled the statute of limitations or upon which the doctrine of contra non valentem might be applied.

After the Spears hearing, Hutchison submitted a letter addressed to the statute of limitations issue raised during our conference.  In the letter, Hutchison alleges in pertinent part that "I had completed my 1983 complaint at the end of May 2004, and had waited about 2 weeks for copies to be made.  When I turned in the original complaint to the law library at the jail for copies to be made, I was told it would only take a few days, but it ended up taking about 2 weeks.  I sent in requests to Majors Stridel and Viator informing them that I was fighting a deadline, but got no response.  I was at the mercy of the jail in getting my 1983 complaint, and copies returned to me.  I did in fact have the complaint finished at the end of May."  Record Doc. No. 17.

15

Even accepting this unsworn statement as true for present purposes (which requires ignoring the fact that Hutchison dated his complaint June 28, 2004 when he signed it, Record Doc. No. 1 (form Section 1983 complaint at p. 5), these allegations do not support application of the doctrine of contra non valentem.

According to his own testimony, and ¶¶ II and III of his form Section 1983 complaint, Hutchison was incarcerated at Basile, not in Jefferson Parish, in May and June 2004 when the copying delay allegedly occurred. Thus, the copying delay is attributable to Basile officials, not Zanotelli or anyone else affiliated with the Jefferson Parish Sheriff's Office. In this case, the doctrine of contra non valentem applies only "if there was some condition coupled with the . . . connected proceeding which prevented the creditor [Hutchison] from suing or acting [or] if the debtor himself [Zanotelli] has done some act effectually to prevent the creditor [Hutchison] from availing himself of his cause of action." Parks (citing Corsey, 375 So.2d at 1321-22). Neither condition occurred in these circumstances.

In short, because plaintiff did not commence this action within the required limitations period after he knew or should have known of the alleged constitutional violations, and no tolling, interruption or extension of the period is applicable, his claims under Section 1983 concerning the beatings on December 21, 2002 and June 13, 2003, are time-barred.

16

III.   MERE THREATS AND VERBAL HARASSMENT

Plaintiff's allegations concerning threats and verbal harassment by Zanotelli in Judge Sullivan's courtroom on June 20, 2003 have not prescribed and must be addressed. However, plaintiff's allegations that he was subjected to threats and verbal harassment by defendant are not cognizable under Section 1983 and fail to state a claim upon which relief may be granted because no violation of his constitutional rights occurred. Robertson v. Plano City, 70 F.3d 21, 24 (5th Cir. 1995). The Robertson court noted that "in the Eighth Amendment context, 'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'" Id. (citing McFadden v. Lucas, 713 F.2d 143, 146 (5th Cir. 1983)); Burnette v. Phelps, 621 F. Supp. 1157, 1162 (M.D. La. 1985); see also Johnson v. Glick, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973) abrogated in part on other grounds by Graham v. Connor, 490 U.S. 386, 397 (1989) (the use of language, no matter how violent, does not constitute a Section 1983 violation); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979) (verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under Section 1983).

"Claims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment . . . ." Jackson v. Liberty County, 860 F. Supp. 360, 363 (E.D. Tex. 1994). Thus, for example, the use of a racial epithet in a

single isolated context does not give rise to a cause of action for violation of constitutional rights. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000); Williams v. Bramer, 180 F.3d 699, 706 (5th Cir.), reh'g denied & opin. clarified, 186 F.3d 633 (5th Cir. 1999); see generally Shabazz v. Cole, 69 F. Supp. 2d 177, 199-201 (D. Mass. 1999) (collecting cases). "[C]itizens do not have a constitutional right to courteous treatment by the police. Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983." Slagel v. Shell Oil Reference., 811 F. Supp. 378, 382 (C.D. Ill. 1993), aff'd, 23 F.3d 410 (7th Cir. 1994) (internal citations omitted). In this case, plaintiff's allegations of verbal abuse and threats do not rise to the level of a constitutional violation, and these allegations fail to state a claim upon which relief may be granted. For the same reason, they cannot constitute a "continuing tort" that might extend the applicable statute of limitations.

## RECOMMENDATION

For all of the foregoing reasons, it is **RECOMMENDED** that plaintiff's complaint be **DISMISSED WITH PREJUDICE** as legally frivolous and/or for failure to state a claim under 28 U.S.C. § 1915(e)(2) and 1915A(b)(1).

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within ten (10)

days after being served with a copy shall bar that party, except upon grounds of plain

error, from attacking on appeal the unobjected-to proposed factual findings and legal

conclusions accepted by the district court, provided that the party has been served with

notice that such consequences will result from a failure to object.  <u>Douglass v. United</u>

<u>Servs. Auto Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this _____ day of December, 2004.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE